LESTER H. CROWTHER, Executor, *v.* ADOLPH B. HIRSCHMANN

[No. 10, January Term, 1938.]

*Decided March 10th, 1938.*

102

The cause was argued before Bond, C. J., Urner, Offutt, Parke, Sloan, Mitchell, Shehan, and Johnson, JJ.

*Lester H. Crowther* and *Charles F. Obrecht,* for the appellant.

*Jacob Kartman* and *Leo M. Alpert,* with whom were *Makover & Kartman* on the brief, for the appellee.

Mitchell, J., delivered the opinion of the Court.

This is the second time the case now under consideration has been before this court. The first appeal was from a judgment entered upon verdict for the defendant, directed by the trial court at the conclusion of the plaintiff's testimony, and resulted in a reversal of the judgment and the award of a new trial. 172 Md. 697, 190 A. 760, 761.

Subsequently, at the suggestion of the plaintiff, the case was removed from the Superior Court of Baltimore City to the Court of Common Pleas of said city, and from a judgment, entered upon a verdict for the defendant, in the latter court, this appeal was taken.

The defendant is sued at law on common counts for money lent and for money received for the use of the plaintiff's decedent, and on a special count, which sets forth, in substance, that, on or about the 24th day of May, 1934, the defendant agreed with the plaintiff's decedent to lend the latter the sum of $2,250; that as evidence of said loan the decedent executed and delivered to the defendant his promissory note, bearing said date and payable one year after date thereof, for said sum, with interest thereon at six per cent. per annum, and at the same time executed and delivered to the defendant, as security for the aforesaid loan, assignments of the deced-

ent's interests in the estates of Frank L. Weaver, late of Baltimore City, deceased, and John T. Welsh, late of the State of New York, deceased; each of said assignments being in the sum of $2,250. That the loan was to have been made immediately upon the execution and delivery of the note and assignments; that the defendant failed to make the loan as agreed upon, having only paid the decedent on account thereof the sum of $1,050, notwithstanding that he, the defendant, collected from the trustees of the estate of the said John T. Welsh the sum of $2,250. Accordingly it is alleged that the defendant is indebted to the plaintiff for the difference between the amount actually loaned the decedent and the amount actually collected by the defendant, under and by virtue of said assignments, or the sum of $1,200.

To the declaration the defendant pleaded the general issue pleas (a) that he never promised, and (b) that he never was indebted, as alleged; and at the trial below five exceptions were reserved by the appellant.

Four of these exceptions relate to rulings of the trial court on evidence, and the fifth relates to its rulings on the prayers. As the first two exceptions involve the same rule of evidence, they will be discussed together.

At the trial of the case, the appellant produced as a witness in his behalf Beatrice Bosworth, the bookkeeper of the appellee, whose name appears as a witness to the signature of Robert S. Weaver, the plaintiff's decedent, on the respective assignments hereinbefore mentioned, and who identified duplicate originals of the two papers as being genuine. The witness testified that she saw the plaintiff's decedent execute the two assignments on May 24th, 1934, in the presence of the appellee and in the latter's office; that at the same time the promissory note was executed; that one of the assignments was filed in the Orphans' court of Baltimore City, in the estate of Frank L. Weaver, and the original of the other assignment was filed in the estate of John T. Welsh, in New York. The witness further testified that the assignor received installment payments aggregating $1,050 on ac-

count of the transaction, and that the assignee collected from the trustees of the Welsh estate the full sum of $2,250, as alleged in the declaration.

It was conceded by counsel for the respective parties that the installment payments, above mentioned, extended over the period beginning May 9th, and ending November 19th, 1934, and on cross-examination the witness stated that the installment payments were so made because the plaintiff's decedent requested that they be made as his needs might require; that she heard the discussion between the appellee and the plaintiff's decedent; and that the latter was to receive $150 at the inception of the agreement, and $900 balance to be paid as and when requested.

Three canceled checks, aggregating the sum of $150, dated May 9th, May 17th, and May 24th, respectively, signed by the appellee and payable to the order of the plaintiff's decedent, were then indentified by the witness.

At this point she was asked the following questions:

(a) "On or after May 24th, 1934, Mrs. Bosworth, was there any agreement by Mr. Hirschmann with Robert S. Weaver to pay any more than the sum of $1,050?"

(b) "Was the agreement made between Mr. Hirschmann and Mr. Weaver on May 24th, to pay any other sum than an agreement of $1,050.00 in instalments as Mr. Weaver's needs might require?"

To the first interrogatory the witness stated: "There was never any agreement to pay more than $1,050." And to the second she replied: "There never was."

Objections to each of the aforegoing questions were seasonably made, and both were overruled by the trial court. These rulings form the basis of the appellant's exceptions 1 and 2.

It is the contention of the appellant that the trial court erred in overruling the objections and permitting the questions to be answered: (a) because they elicited from the witness a conclusion of law; (b) because they sought to have the witness construe the assignments then in evidence; (c) in that the questions concerned matters

of which the witness could have no knowledge as to the facts; and (d) that their purport was to introduce parol evidence to contradict and vary the terms of the written agreements. With these several contentions, however, we do not agree. In this connection, it should be borne in mind that Mrs. Bosworth was produced by the appellant, and that, at the time the questions were asked, she was on cross-examination. She had testified on behalf of the appellant as to the execution of the several assignment documents.

Furthermore, the record shows that, without exceptions to the rulings, the witness was permitted to testify that there was a written memorandum as to how the payments were to be made, and how much they were to be, and that that memorandum was executed on May 17th. As heretofore indicated, she had previously testified that she heard the transaction discussed by the respective parties; that the sum of $1,050 only was to be paid the appellant's decedent, and she had detailed the manner in which the installment payments were to be made. No exceptions were taken to the admission of the aforegoing evidence, relating, as it did, to discussions and transactions between the parties antedating the execution of the assignments. At the time the questions were put to the witness, both of the assignments were in evidence, and she had testified to the execution of the same. Her answers to the interrogatories did not add anything to the facts to which she had prior thereto testified. Inasmuch as the trial court, upon objection, refused to admit in evidence the alleged memorandum of May 17th, which ruling was in conformity with the ruling of this court in the former appeal, evidence as to the alleged contents of the paper had no proper place in the case, but as stated, that testimony is in the record before us, without exception, and, in view of this fact it is our conclusion that the action of the lower court in admitting the questions and answers now under consideration does not mount up to reversible error.

The same witness was asked whether on May 24th,

1934, "or at any time thereabouts," Hirschmann, the appellee, and Weaver, the appellant's decedent, discussed the reason or purpose for the execution of the assignment filed in the estate of Frank L. Weaver, and her reply was in the affirmative. She further testified that Mr. Crowther, the appellant, at that time was present; that he then represented the decedent; and that Hirschmann spoke to Crowther several times about the estate of Frank L. Weaver. Then appears the following excerpt from the record:

"Q. Now, can you tell us if there was any discussion between the parties as to the purpose or reason for the execution of the Baltimore assignment? (Mr. Crowther) When? (The Court) May 24, she said at the time— (Mr. Kartman) Yes, sir. (The Court)—which necessarily means May 24th. Just answer yes or no. A. Yes, there was. Q. Can you tell us what that discussion was?" To the latter question, objection interposed by the appellant was overruled, and the exception to that ruling is the third found in the record.

Then appears the following:

"A. Well, Mr. Crowther seemed to think that the money—(The Court) Don't say what he 'seemed to think,' as that expresses an opinion or conclusion, but simply— (The Witness) I am trying to answer the best I know how. (The Court) Do you mind waiting a second? You will get off better if you take the court's advice. (The Witness) All right. (The Court)—but simply repeat phonographically, so to speak, exactly as you can, what everybody said. (Mr. Kartman) Start out by telling what Mr. Crowther said, not what he seemed to think. A. Well, Mr. Crowther told Mr. Hirschmann that the Frank L. Weaver estate, the money that Frank L. Weaver was entitled to, that fifty thousand dollars, might be distributed through the Orphans' Court of Baltimore, and that he and Robert S. Weaver were appointed administrators of that estate, but that estate never did come to Baltimore; they distributed that money from the Welsh estate in New York. (Mr. Kartman) All right, never mind about that now, con-

fine yourself to the discussions on May 24th, as a result of Mr. Crowther's statement to that effect. (The Court) What, if anything, was done? A. This Baltimore paper was drawn by Mr. Hirschmann's son, so that—may I say any more? (Mr. Kartman) So that what? Go ahead. A. So that if the money did come to Baltimore to the Estate of Frank L. Weaver, this $2,250 might be paid in Baltimore; but it never came to Baltimore."

From this somewhat extended review of the testimony immediately following the unanswered question to which the exception was directed, it will be noted that a colloquy between the court, counsel, and the witness took place, and that other questions, substantially along the same line of inquiry, were put to the witness and answered, without objection. For this reason, therefore, the exception was waived, and it will be so regarded. *Calder v. Levi*, 168 Md. 260, 177 A. 392; *Ray v. Morse*, 140 Md. 529, 118 A. 62. It is our conclusion that the exception is not properly before us.

After the aforegoing testimony, the witness on further cross-examination identified a duplicate original of the agreement of May 24th as filed in the Frank L. Weaver estate, and also a duplicate original of the release executed by the appellee to the trustees of the estate of John T. Welsh, as evidence of the full payment of $2,250 to the appellee. On redirect examination, the witness then revealed that her former testimony bearing upon the discussions and transactions between the parties as of May 24th, was in error, and that they took place prior to that date. Whereupon the appellant moved "that the previous testimony of the witness about these discussions be stricken from the record." The overruling of that motion constitutes the error assigned by the fourth exception.

The court concludes that the motion was too general, in that it did not identify which of a series of questions and answers it was designed to have eliminated. *Wilson, Close & Co. v. Pritchett*, 99 Md. 583, 58 A. 360. It may be added that the fact that the witness gave conflicting testimony to that extent affected the weight of her testi-

mony; it being for the jury to determine, from the facts before it, the correct date of the discussions.

Mrs. Bosworth, upon being called as a witness for the defendant, thereupon testified that on December 15th, 1934, Robert S. Weaver and Hirschmann executed another paper relating to the transaction, which paper she attested as a witness. This document was offered in evidence, and is found in the record. Its preamble recites the execution of the papers of May 24th, and then sets forth the inherent inconsistency with the theory of an absolute sale of Weaver's interest, as now contended by the appellee, which the former papers clearly demonstrate. Reciting that the assignment filed in the Orphans' Court of Baltimore City was executed and filed through "inadvertence and mistake," the instrument of December 15th sets forth an additional consideration of $25 as having been paid Weaver, and, on the part of the latter, confirms and ratifies the transactions between the parties as having always been intended to effect an absolute sale of Weaver's inheritance to the appellee and not a pledge of said inheritance as a loan. The signature of Robert S. Weaver, the appellant's decedent, to the latter paper, was disputed by the appellant and extended testimony appears in the record relative to its genuineness.

At the conclusion of the testimony, exceptions were taken by the appellant to the granting of the several prayers of the appellee, but as the only ruling in this respect pressed in the argument before this court was as to the granting of the appellee's G prayer, the exceptions to the other prayers will be considered as having been abandoned.

The G prayer, which is the subject of the fifth exception, is as follows: "The defendant prays the Court to instruct the jury that, in order to impeach the genuineness of the signature of Robert S. Weaver to the paper of December 15, 1934, the burden rests upon the plaintiff to establish by clear, precise and indubitable evidence that said signature is a forgery." It is urged by the appellant that the prayer is bad for the reason that it

places the burden of proving the lack of genuineness of the signature upon the plaintiff, whereas the burden properly rested upon the defendant, the proponent of the paper.

It is a well-recognized principle that the burden of proof of the issue on which suit is brought rests with the plaintiff, and it is equally well settled that, when the defendant sets up an affirmative defense, he is required to offer legally sufficient evidence of the fact upon which he relies, in order to sustain his position; it being for the jury to pass upon the weight of the evidence. 1 *Greenleaf, Evidence* (16th Ed.), p. 148; 5 *Wigmore on Evidence,* p. 440, sec. 2486.

As said in 2 *Jones' Commentaries on Evidence,* (2nd Ed.) p. 859: "Discrimination must be exercised in using the terms 'burden of proof and weight of evidence:' while the burden of proof remains on the party affirming a fact in support of his case, and is not changed in any aspect of the case, except by legal presumption, the weight of evidence shifts from side to side in the progress of the trial, according to the nature and strength of the evidence offered in support or denial of the main fact to be established. During the progress of the trial it often happens that a party gives evidence tending to establish his allegation, sufficient, it may be, to establish it *prima facie,* and it is sometimes said that the burden of proof is then shifted. All that is meant by this is that there is a necessity for evidence to answer the *prima facie* case or it will prevail; but the burden of maintaining the burden of the issue involved in the action is upon the party alleging the fact which constitutes the issue, and this burden remains throughout the trial." *Meyer Motor Car Co. v. First National Bank,* 154 Md. 77, 81, 140 A. 34.

The paper of December 15th was, in effect, designed as a release of any obligation, on the part of Hirschmann, to Robert S. Weaver, by virtue of the execution of the papers of May 24th and, in terms, established an outright sale of the inheritance. This paper was the appel-

lee's defense to the plaintiff's claim for a refund of the excess over $1,050 advanced to Weaver by the appellee, and was an affirmative defense, which it was incumbent on him to prove, so that it was error to instruct the jury that the burden of proving its lack of genuineness rested upon the plaintiff.

The plaintiff, however, relieved the defendant of the necessity of so doing, by proving the signature of Weaver by his own witness, though the defendant did offer legally sufficient evidence of the same by witnesses whom he produced, and thus gratified the rule imposed on him. *Supra.* The jury had the facts respecting the execution of the paper from so many witnesses, including the alibi of those with whom Weaver resided, that they could hardly be misled by the instruction, as to the material fact in the case to be decided by them, and for this reason we regard the granting of the G prayer as harmless error.

What was said by the Chief Judge of this court in the opinion filed in the former appeal in this case applies with equal force to the facts in the instant appeal, namely: "Even if, accepting the construction of the transaction as one of sale of $2,250 for $1,050, the bargain should be regarded as unconscionable, it would be one binding on competent parties, in an action at law, at least. See *Shriver v. Druid Realty Co.,* 149 Md. 385, 131 A. 815; *Pomeroy, Equity Jurisprudence,* sec. 953. And there has been no defense made on the ground of incompetency."

Finding no reversible error in the rulings of the lower court, the judgment will be affirmed.

> *Judgment affirmed, with costs to the appellee.*