THE FRANKLIN FIRE INSURANCE COMPANY OF BALTIMORE CITY *vs.* ROBERT M. HART.

*Action for Wages not maintainable against a Corporation, under an Employment antecedent to its Corporate existence.*

The Act of 1867, ch. 392, chartering an insurance company, by its 1st section enacts that ten named persons, " *and the subscribers to the stock of the company,* and their successors, shall be and they are hereby declared to be a body corporate, by the name," &c.; *section* 2 fixes the capital stock at $300,000, divided into 30,000 shares of $10 each; *section* 4 provides "that as soon as three thousand shares are subscribed and paid, or secured to be paid, this company shall be competent to transact all kinds of business for which it is established;" *section* 5 enacts " *that after the subscription* of three thousand shares, as provided for in the foregoing 4th section, the said" (ten named persons) "are hereby created directors of the said" (company) "until the 1st Monday in May, 1867, and until their successors shall be elected as herein-

before provided, and such of them as shall be present at the first meeting *shall proceed to organize* the company by electing a president and secretary thereof." And *section* 15 enacts " that as soon as practicable after the passage of this Act, *the persons named in the first section thereof* shall open *books for subscription* to the capital stock of the company at some public place or places in the city of Baltimore, of which public notice shall be given, and shall keep the same open for ten days or longer in their discretion." The parties named in the 1st section of the charter met on the 15th of April, 1867, before any subscriptions of stock had been obtained, elected a president and secretary of the company, and fixed the salary of the secretary at $100 per month. Committees were appointed to solicit subscriptions, and several meetings were held up to the 13th of June; but no subscriptions were obtained, and the parties engaged in obtaining them ceased their efforts, and the whole matter was apparently abandoned by them. Subsequently, in the fall of the same year, other parties came forward, and the requisite amount of stock was obtained through other agencies and under other auspices. The incorporators again met on the 8th of November, 1867, elected another president and appointed another secretary. At a subsequent meeting of the stockholders, called upon notice, directors were elected, and the company commenced operations under its charter. On a suit by the former secretary against the company to recover his salary from the date of his appointment to the 31st of January, 1868. HELD:

1st. That the manifest design of the charter was not simply that the company should not commence its business, but that the corporation should *not come into existence* until 3,000 shares of the capital stock had been subscribed and paid, or secured to be paid. .

2d. That the company had no legal existence at the time the plaintiff was elected secretary, or prior to the 8th of November, 1867.

3d. That the plaintiff had no right of action, and could not recover against *the corporation* for services rendered, or under an appointment thus made prior to its existence as such, unless it had in some manner become legally bound therefor, of which there was no evidence.

APPEAL from Baltimore City Court.

The appeal in this case was taken from a judgment for $700, rendered by Baltimore City Court, on the 9th of November, 1868, against the appellant at the suit of the appellee. The suit was brought on the 2d of April, 1868,

by the appellee, to recover compensation, at the rate of $100 per month, for services which he alleged he had rendered as secretary to the appellant, from the 15th of April, 1867, to the 31st of January, 1868.

The cause was argued before STEWART, MILLER, ALVEY and ROBINSON, J.

*John Carson*, for the appellant:

By a proper construction of the Act of incorporation, 1867, ch. 392, the subscription to the stock and payment per share, as required by the Act, were conditions precedent to be performed, and until fully complied with, the said persons were only persons or *quasi* commissioners, and not corporators. *Tagart vs. Western Md. R. R. Co.*, 24 *Md.*, 563; *Maltby vs. North Western R. R. Co.*, 16 *Md.*, 444; *Plank Road Co. vs. Hoffman*, 9 *Md.*, 560, 569.

The Act did not create a corporation *eo instanti;* acceptance was first to be had, and the conditions precedent were to be performed. The Act only constituted such persons a body corporate as should thereafter become stockholders in the manner presented by the Act. The creation of a corporate existence can never take effect until the association be formed, and the organization be completed. Vitality was given to the corporation by the voluntary association and organization of its members. Had they remained passive the law could have had no effect. *Falconer vs. Campbell*, 2 *McLean*, C. C. R., 203; *Walker vs. Devereux*, 4 *Paige*, 245; *Fire Department vs. Kip*, 10 *Wend.*, 266; *Crocker vs. Crane*, 21 *Wend.*, 212, 218, 219; *Angell & Ames on Corp.*, sec. 82 *to* 86 *inclusive*, and the authorities previously referred to.

*Wm. Shepard Bryan*, for the appellee:

The appellant's own book, produced at the trial by its own counsel, showed that it was organized, and that the

appellee had been elected secretary, and his salary fixed at one hundred dollars a month.

The appellant became a corporation as soon as the corporators accepted the charter granted by the Legislature (Act of 1867, ch. 392). It was then competent to make the contract with the appellee, which it made when it employed him as secretary. It would be a gross fraud, after accepting his services, to defeat his demand for compensation on the grounds stated in the appellant's prayer.

MILLER, J., delivered the opinion of the Court.

Notwithstanding the language of the first section of the Act of 1867, ch. 392, incorporating the appellant, we are satisfied, from a careful examination of all the provisions of that Act, it was not the intent of the Legislature to create the *named persons* a body corporate immediately upon *their* doing any act evidencing their acceptance of the charter. On the contrary, the manifest design was not simply that the company should not commence its business, but that the corporation should *not come into existence* until three thousand shares of the capital stock had been subscribed and paid, or secured to be paid.

It is a law chartering a Fire Insurance Company. The *first* section enacts that ten named persons, "*and the subscribers to the stock of the company,* and their successors, shall be and they are hereby declared to be a body politic and corporate, by the name," &c. The *second* fixes the capital stock at $300,000, divided into 30,000 shares of $10 each. The *fourth* provides "that as soon as three thousand shares are subscribed and paid, or secured to be paid, this company shall be competent to transact all kinds of business for which it is established." The *fifth* enacts "that *after the subscription* of three thousand shares, as provided for in the foregoing fourth section, the said" ten named persons "are hereby created directors of the said" company "until the first Monday in May, 1867, and

until their successors shall be elected as hereinafter provided, and such of them as shall be present at the first meeting *shall proceed to organize* the company, by electing a president and secretary thereof." And by the *fifteenth* section it is enacted " that as soon as practicable after the passage of this act, *the persons named in the first section thereof* shall open *books for subscription* to the capital stock of the company, at some public place or places, in the city of Baltimore, of which public notice shall be given, and shall keep the same open for ten days or longer in their discretion."

These provisions obviously point to and adopt most of the usual methods of creating such corporations. The parties named in the first section are authorized to act as commissioners to open books for subscriptions, and *when* three thousand shares are subscribed and paid, or secured to be paid, the same persons are created the first directors, with power *then* to meet and organize the company by electing proper officers. The procurement of the requisite number of shares is made essential to the existence of the corporation. Before this no meeting could be held, no directors to represent the stockholders are or could be created or elected, and no officers chosen to represent the body corporate. But after such subscription is made directors are created with power to meet and organize the company, and then for the first time vitality is given to the artificial being, and its existence commences. True, the first section speaks of a present creation of a body corporate, but it is to be observed it is not simply the named persons and their successors in office, but these " and the subscribers to the stock of the company and their successors," that are declared to be incorporated. There is in this statute no provision giving to the named persons full power and authority to exercise *all the corporate powers* of the company until the first election of directors, as there is in the charter of the Frostburg Coal

Company (Act of 1844, ch. 135), which was construed by the Supreme Court in 24 *How.*, 278. This provision marks the broad distinction between that case and the present, and was relied upon by the Supreme Court as removing any doubt which might arise upon the language of the first section. But the very case before us has been met by the decision of the Supreme Court of New York in *Crocker vs. Crane*, 21 *Wend.*, 218. The law of New York there construed was the charter of a Rail Road Company (Act of 1832, ch. 129), and its first section enacted that three named persons " and such other persons as shall hereafter become stockholders of said company, are hereby constituted a body corporate and politic, by the name," &c. The capital stock was fixed at $650,000, and by subsequent sections provision was made for obtaining subscriptions at various places through the agency of commissioners, who were to meet after a stated period, and if more than $650,000 had been subscribed they were to distribute the stock to the several subscribers, in such manner as they should deem best for the interests of the corporation. And the Court held that " the awarding and distribution of the stock was a *condition precedent to the existence of the corporation.*"

The record shows that the parties named in the first section of the charter met on the 15th of April, 1867, before any subscriptions of stock had been obtained, elected a president, and the appellee secretary of the company at a salary of $100 per month, who brought this action to recover his salary at that rate from that date to the 31st of January, 1868. Committees were appointed to solicit subscriptions, and several meetings were held up to the 13th of June, but no subscriptions were obtained, and the parties engaged in obtaining them ceased their efforts, and the whole matter seems to have been abandoned by them. Subsequently in the fall of the same year other parties came forward and the requisite amount of stock

was obtained through other agencies and under other auspices. The stock having been secured, the incorporators again met on the 8th of November, 1867, elected another president and appointed another secretary. At a subsequent meeting of the stockholders called upon notice, directors were elected and the company commenced operations under its charter. From these facts, and the views already expressed, it is apparent the company had no legal existence at the time the appellee was elected secretary, or prior to the 8th of November, 1867. It is clear the appellee has no right of action, and cannot recover against *the corporation* for services rendered or under an appointment thus made prior to its existence as such, unless it has in some manner become legally bound therefor, and of this there is no evidence.

It follows there was error in the rulings of the Court in granting the plaintiff's prayer, which placed his right to recover upon his appointment as secretary on the 15th of April, 1867, as well as in the instruction which the Court gave, which places it upon an employment by the original corporators, of the plaintiff as secretary, and an agreement that he should receive for his compensation at the rate of $100 per month. The judgment must be reversed without a *procedendo*.

*Judgment reversed and*
*no procedendo.*

(Decided 16th June, 1869.)