# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Clifford C. Hansen, Respondent/Appellant,

v.

Fields Company, LLC; Beechwood Advisory Group, Inc.; Beechwood Development Group of South Carolina, LLC; and Beechwood Development Group, Inc., Defendants,

Of whom Beechwood Development Group of South Carolina, LLC, is the Appellant/Respondent.

Appellate Case No. 2011-190886

---

Appeal from Charleston County
The Honorable Kristi L. Harrington, Circuit Court Judge

---

Opinion No. 27436
Heard February 4, 2014 – Filed August 20, 2014

---

**REVERSED**

---

Tanya A. Gee, Manton M. Grier, Jr., and Val H. Stieglitz, III, all of Nexsen Pruet, LLC, of Columbia, for Appellant/Respondent.

William E. Hopkins, Jr., of Hopkins Law Firms, LLC, of Pawleys Island, for Respondent/Appellant.

---

**JUSTICE HEARN:** At its simplest, this appeal concerns whether a limited liability company (LLC) may be held liable for the actions of a promoter and

whether any evidence to support such liability was presented here.  We reverse and hold the circuit court erred in denying the directed verdict on the issue of liability because there was no evidence on which a jury could hold the defendant Beechwood Development Group of South Carolina, LLC (Appellant) liable.

## FACTUAL/PROCEDURAL BACKGROUND

The events giving rise to this lawsuit involve numerous individuals and corporate entities and are particularly fact-intensive.  Prior to recounting those facts in detail, briefly, the facts are these: Clifford Hansen, the plaintiff, was introduced to Robert Fields and through Fields engaged the services of Beechwood Advisory Group, Inc. (Advisory Group) to assist him in procuring capital in order to purchase a water bottling company in South Carolina.  Fields and Hansen worked together toward this goal until Fields disavowed any obligation to Hansen and effectively cut him out of the deal.  In doing so, Fields found investors, formed Appellant, and purchased the water bottling company.  Hansen sued Appellant for the actions of Fields and his various corporate entities, and following the denial of Appellant's motion for a directed verdict, a jury returned a verdict in favor of Hansen.

In much greater detail, the facts are as follows.  Hansen, an entrepreneur, sought to purchase Hickory Springs Water Company, Inc. (Water Company) in Elloree, South Carolina.  He met with the company's owner, George Milner, and thereafter, Milner produced a letter of understanding setting forth initial terms for the purchase.  Hansen created Carolina Springs Bottling, LLC as the entity that would purchase Water Company, and because he did not have the necessary capital to close the deal, he approached Fields about locating investors and financing for him.  Fields was a Charleston businessman who was involved in and acted on behalf of a number of corporate entities including Advisory Group which was owned by Fields, Dennis Byrd, Andrew Easter, and Richard Gregg.

Advisory Group agreed to represent Hansen in procuring capital and produced a letter of understanding to that effect dated December 16, 2003, which Fields signed on behalf of the corporation.  The agreement provided that Advisory Group would assist Hansen in securing capital and financing the purchase.  However, on January 12, 2004, Advisory Group terminated its representation of

Hansen and informed him that it reserved the right to purchase Water Company.[1] During that same week, the four partners of Advisory Group—Fields, Byrd, Gregg, and Easter—created a new corporation, Beechwood Development Group, Inc. (Development Group), whose purpose was to purchase the water company.

Despite the letter and his knowledge that Fields, Byrd, Gregg, and Easter had set up a new corporate entity for the purpose of purchasing Water Company, Hansen approached Fields about the possibility of his wealthy friend from Texas, David Hunt, investing in the deal. Hansen and Fields then executed a second agreement whereby Advisory Group again committed to assist Hansen in finding capital.[2] Hansen would compensate Advisory Group in the amount of $100,000 for those services. It also provided that in the deal, Hunt would own 75% and Hansen would own 25% of the resulting company, Carolina Springs Bottling, LLC. Carolina Springs Bottling, LLC would own 100% of Carolina Springs Bottling, Inc. which would be the entity that owned the springs and bottling facility.[3]

Several weeks after flying to Texas to meet with Hunt, Fields sent an e-mail to Patrick Cobb, a business acquaintance, soliciting interest in the deal. Fields signed the e-mail as "Partner, Beechwood Advisory Group, Inc." and attached an "Executive Summary" for Carolina Springs Bottling, Inc. The Executive Summary mentioned Hansen in three respects. The cover page provided contact information for "Clifford Hansen" and "Robert Fields, Beechwood Advisory Group." It also described the proposed management team of Carolina Springs Bottling, Inc. as including Hansen as chief executive officer and listed Hansen as a member of the board of directors.

Three days later, Fields e-mailed Cobb with a new purpose, signing as "Partner, Beechwood Advisory Group." He proposed a new deal in which Hunt would own 60% of the equity, "Beechwood" would own 15%, another investor would own 15%, and 10% would "be for the owner/operator (Hansen) on an earn in basis." About this time, Fields and Hansen's relationship became strained.

---

[1] Advisory Group had previously informed Hansen that he failed to pay as required by the agreement and if he did not meet the requirements of the agreement within a week, it would cease representing him.

[2] More specifically, Advisory Group agreed to secure capital from Hunt, advise Hansen on negotiations with Milner, and assist in obtaining bank financing.

[3] Although the agreement consistently referred to Advisory Group, Fields indicated by his signature that he executed it on behalf of Development Group.

Viewing the facts in the light most favorable to Hansen as we must, Hansen realized Fields was working to acquire the water company to his exclusion. Hansen thus began working on his own to secure financing.[4]

On May 26, Fields sent Hansen a letter on behalf of Advisory Group stating that it had "terminated any representation on [his] behalf." By this time, Hansen's letter of understanding with the water company's owner had long since expired. Hansen sent Milner a proposed new letter of understanding, but Milner did not sign it.

On July 7, Hickory Springs Water, LLC was incorporated. The entity's members were Appellant and Greenbax Enterprises, Inc., with Appellant owning a 48% interest and Greenbax owning a 52% interest.

On July 12, Appellant was formed. The members of the LLC were Development Group which owned a 43.5% interest, ACC Ventures, LLC which owned a 41.5% interest, and TDTF Partnership which owned a 15% interest. ACC Ventures was an LLC operated by Cobb and owned by him and his three sons. ACC Ventures committed to the deal in July. TDTF Partnership was a partnership between George Finnegan and James Felder. Finnegan met Fields in March of 2004 and became involved in the deal in May.

Hickory Springs Water, LLC ultimately purchased Water Company. At the closing, Fields was present on behalf of Appellant.

Hansen brought suit against Fields Company, LLC; Advisory Group; Development Group; and Appellant. He asserted the defendants were all jointly and severally liable for breach of fiduciary duty, breach of contract, breach of contract accompanied by a fraudulent act, misrepresentation, conversion, and interference with prospective contractual relations. Prior to trial, he settled his claims against Advisory Group and potential claims against Gregg and Byrd. Fields Company, LLC and Development Group did not file an answer and ultimately defaulted. Appellant proceeded to trial.

---

[4] Hansen applied for a bank loan in his effort to secure financing. The bank requested financial information for Water Company in order to decide whether to approve the loan. Hansen had previously either prepared or obtained financial documents from Milner and then provided those documents to Fields. Due to a computer crash, Hansen lost the documents and contacted Fields seeking copies. Fields responded to his request by rejecting the idea of bank financing and refusing to provide the documents.

Following the close of Hansen's case, Appellant moved for a directed verdict on all causes of action, arguing the allegedly wrongful acts were all committed by Fields, Advisory Group, and Development Group, and it should not be held liable for those other parties' acts. The circuit court denied the motion, concluding there was evidence from which a jury could find that Appellant ratified the conduct of the other parties.

The circuit court permitted a bifurcated jury deliberation whereby the jury would first determine liability on all claims. If the jury found Appellant liable on any of the claims, Hansen would then have to elect a cause of action. The jury would then determine Hansen's damages.

The jury returned a liability verdict for Hansen on all causes of action. Thereafter, Hansen elected to proceed on his interference with prospective contractual relations claim, and the jury returned a damages verdict in the amount of $1,189,408. The trial court granted Appellant's motion for a set off and reduced the verdict by $130,000, the amount of Hansen's settlement with the other defendants.

The parties filed cross-appeals, and this Court certified the case pursuant to Rule 204(b), SCACR.

## LAW/ANALYSIS

Appellant appeals the denial of its motion for a directed verdict on all of Hansen's claims, asserting there was no evidence from which a jury could conclude that it is liable to Hansen. The parties do not dispute that Appellant did not breach any contract with Hansen, nor did it act tortiously towards him. Rather, Hansen's theory of the case depends on Appellant being liable for its promoters'— specifically Fields' and his related entities'—acts.[5]

The first step in resolving this case is determining if and when a limited liability company can be held liable for its promoter's pre-incorporation contracts or torts, issues of first impression in South Carolina. Turning first to a corporate entity's liability for preformation contracts, we adopt the prevailing rule that "[b]ecause a corporation cannot have agents, contract for itself, or be contracted

---

[5] A promoter of a corporate entity is a person who acts to organize the entity by preparing it to transact business and establishing it. *See Bivens v. Watkins*, 313 S.C. 228, 233 n.5, 437 S.E.2d 132, 135 n.5 (Ct. App. 1993) ("[P]ersons who plan or organize a corporation are 'promoters.'").

with prior to its incorporation, it is not liable on any contracts that a promoter makes for its benefit prior to incorporation unless it assumes the obligation by its own act after incorporation . . . ."  18 Am. Jur. 2d *Corporations* § 123 (2014); *see also Duray Dev., LLC v. Perrin*, 792 N.W.2d 749, 755 (Mich. Ct. App. 2010) (applying the rule to a limited liability company); *JCL Props., LLC v. Equity Land Developers, LLC*, 958 N.Y.S.2d 433, 434 (N.Y. App. Div. 2013) (applying the rule to a limited liability company).

While initially not liable for a promoter's contracts, a corporation may become liable for a promoter's preformation contract either through expressly ratifying the contract or through implicitly ratifying it by accepting its benefits with full knowledge of its terms.  *See, e.g.*, *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 745 (Del. 2006) ("'[I]f the subsequently formed corporation expressly adopts the preincorporation agreement or implicitly adopts it by accepting its benefits with knowledge of its terms, the corporation is bound by it.'" (quoting *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 350 (Del. Ch. 2003)); *Yost v. Early*, 589 A.2d 1291, 1300 (Md. Ct. Spec. App. 1991) ("If the corporation ratifies the contract or accepts its benefits with full knowledge of the circumstances of their acquisition, however, the corporation is bound by the contract's obligations.") (internal quotation omitted); *Fortune Furniture Mfg. Co. v. Mid-South Plastic Fabric Co.*, 310 So. 2d 725, 727 (Miss. 1975) ("The general rule is that a contract made by promoters with a view towards incorporation will be binding upon the corporation if it accepts benefits of the contract with the full knowledge of the terms of the contract."); 18 Am. Jur. 2d *Corporations* § 123 ("A corporation may after its organization become liable on preliminary contracts made by its promoters by expressly adopting such contracts or by receiving the benefits from them . . . .").

Here, the directed verdict should have been granted as to Hansen's contract claims because he failed to present any evidence from which a jury could find that Appellant ratified any contract with Hansen.[6]  There was no evidence that Appellant expressly ratified any preformation contract.  There also was no evidence to show that Appellant benefited from or accepted any benefits of Fields' or his related entities' contracts with Hansen.  The contracts Hansen entered into

---

[6] Hansen failed to point to any particular contract and articulate how it was expressly or impliedly ratified.  Rather, Hansen relies on broad and conclusory contentions that Appellant "sought to and did, in fact, ratify all of the actions, agreements, representations, contracts and warranties made by Fields in furtherance of their purchase of [Water Company] . . . ."

with Advisory Group and Development Group dealt with those entities finding capital for him in order to enable him to purchase Water Company. Appellant wanted to purchase Water Company and was a competitor in that respect. Therefore, Appellant could not and did not benefit from any efforts to find capital for Hansen. Thus, because there was no evidence from which a jury could find that Appellant expressly or impliedly ratified any contract with Hansen, the directed verdict should have been granted as to Hansen's contractual claims.

Turning to Hansen's tort claims, for the preformation torts of a corporate entity's promoter, the rule among those jurisdictions that have considered the issue is that a "corporation is not liable for torts that its promoters committed before it came into existence." 1A William M. Fletcher *et al.*, *Fletcher Cyclopedia of the Law of Corporations* § 218 (perm. ed., rev. vol. 2010); *see also Arch Aluminum & Glass Co. v. Haney*, 964 So. 2d 228, 234 (Fla. Dist. Ct. App. 2007) (rejecting the plaintiff's tort claim against a corporation for the acts of its promoters on the basis of the rule that a corporation is not liable for the tortious acts of its promoters); *Nilavar v. Osborn*, 711 N.E.2d 726, 740 (Ohio Ct. App. 1998) ("[A] corporation cannot be held liable for the acts of a promoter that were performed before the corporation's existence."); *Fisk v. Leith*, 3 P.2d 535, 535 (Or. 1931) (holding a corporation cannot be held liable for the acts of its promoter undertaken prior to the corporation's existence); *Edmunds v. Sanders*, 2 S.W.3d 697, 704 (Tex. App. 1999) ("Normally, a corporation which has no legal existence at the time of an incident cannot be liable for that incident."). Hansen has not cited, nor have we found, any authority applying a different rule. Additionally, three policy concerns lead us to conclude that it is the proper rule. First, there is no agency relationship between a promoter and a non-existent corporate entity. Second, the individual tortfeasor—the promoter—is still liable for any tort he committed and thus, the injured party is not denied recourse for the wrong suffered. To the extent the promoter owns a portion of the corporate entity, the injured party could use that interest to satisfy any judgment against the promoter. Additionally, other members of the corporate entity could potentially be held liable under a conspiracy theory if they knew of and aided in the tort. *See Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Planning Corp.*, 358 S.C. 460, 470, 596 S.E.2d 51, 56–57 (2004) ("A civil conspiracy is a combination of two or more parties joined for the purpose of injuring the plaintiff and thereby causing special damage."). Third, a contrary rule would permit innocent investors to be financially harmed due to tortious conduct they neither aided nor were aware of and therefore, may stifle investment by causing potential investors to fear that a corporation will be held liable for tortious

conduct of which it had no knowledge.  Accordingly, we adopt the rule that a corporation is not liable in tort for the preformation acts of its promoter.[7]

Because a corporation is not liable for the preformation acts of its promoter, Appellant cannot be liable in tort for Fields' or his related entities' preformation acts.  Thus, the circuit court should have granted the motion for a directed verdict.

## CONCLUSION

Because Hansen failed to present any evidence Appellant ratified Fields' or his related entities' contracts, Appellant was entitled to a directed verdict on the contract claims.  Additionally, consistent with the prevailing rule elsewhere, we hold Appellant was not liable for any torts committed by its promoters.  Accordingly, we hold the circuit court erred in denying Appellant's motion for a directed verdict and reverse.[8]

**TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.**

---

[7] Although inapplicable here because there is no evidence Appellant ratified Fields' conduct, we recognize there are exceptions to this rule. *See Nanodetex Corp. v. Defiant Techs.*, 349 F. App'x 312, 322 (10th Cir. 2009) ("[C]orporations are usually prevented from retaining the benefits of wrongful conduct while escaping liability for it."); 18 C.J.S. Corporations § 104 ("A corporation is not liable for the fraud, negligence, or other torts of its promoters or corporators prior to its creation, unless it has in some way rendered itself liable by its own act after acquiring corporate existence.").

[8] Because our resolution of this issue is dispositive, we need not reach Hansen's arguments or the other issues raised by Appellant. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when the disposition of a prior issue is dispositive).