650 A.2d 303

**FRANCIS O. DAY CO., INC.**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 463, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Dec. 5, 1994.

Charles Norman Shaffer (Peter I.J. Davis and Shaffer & Davis Chartered, on the brief), Rockville, for appellant.

Frank E. Couper, Asst. County Atty., (Joyce R. Stern, County Atty. and Marc P. Hansen, Sr. Asst. County Atty., on the brief), Rockville, for appellee.

Argued before ALPERT, CATHELL and MURPHY, JJ.

CATHELL, Judge.

Appellant, Francis O. Day Co., Inc. (Day), appeals from the granting of summary judgment in favor of appellee, Montgomery County, Maryland, in respect to a claim for unjust enrichment filed by Day against Montgomery County.[1] The factual predicate, in spite of appellant's assertion, is not in dispute. In other words, the result would be the same under any interpretation of the facts. Thus, the issue was appropriately addressed below in a summary judgment context. Day, nevertheless, presents a unique basis for claiming relief under unjust enrichment principles.

---

[1] The original complaint contained several counts. Appellant only raises on appeal the trial court's treatment of the unjust enrichment count.

## Facts

Aldre, Inc. (Aldre), was a general partner for several limited partnerships involved in developing several properties. Aldre entered into an agreement or agreements with Montgomery County in respect to the developments in which it was required to construct infrastructure, including roads, according to appellee's standards, in order to service the needs of the potential inhabitants of the development. The agreements required Aldre at a certain point in time to dedicate such improvements to appellee, after which the appellee would be required to include those improvements in its infrastructure network and be responsible for their maintenance and upkeep.

Aldre was required by appellee to post performance bonds but no payment bond. The arrangements between Aldre and appellee were pursuant to the County's various subdivision and developmental statutes.

Thereafter, Aldre entered into a contract with appellant for the latter to construct substantial portions of the infrastructure for the various developments. Aldre suffered financial difficulties and defaulted on payment to appellant. Unable to collect from Aldre or to enforce liens against Aldre's property, appellant instituted suit against the County. Appellant appears to have posited its theory of recovery initially on a concept that, because the infrastructure was to be dedicated to appellee after it was completed, the agreement between Aldre and appellant was for the construction of a public improvement and, thus, was subject to the Little Miller Act [2]. Appellant then argued that appellee was derelict or negligent in not requiring a payment bond as required under that act.

Although appellant discusses the Little Miller Act extensively in its brief, it has not appealed the trial court's decision on the counts that alleged the provisions of the Act had been violated. We, accordingly, shall not address the Act further.

The issue for us to decide is rephrased as:

---

**2.** Md.Code (1988) §§ 17–101 *et seq.* of the State Finance and Procurement Article.

When a governing body, pursuant to its statutes, requires a developer to enter into agreements to construct the infrastructure necessitated by the potential demands of the developments' inhabitants and later dedicate the improvements to the governing entity, is that governing entity unjustly enriched if the developer fails to pay fully the subcontractor for the work performed in constructing the improvements?

The answer is "No," and we shall affirm.

## The Law

We shall discuss generally the Maryland law on unjust enrichment, noting initially that neither party has directed us to any Maryland cases involving unjust enrichment claims under factual situations remotely similar to those extant in the case *sub judice.* We likewise have failed to find any Maryland cases on point.

While we shall resolve the issue presented in our discussion of the granting of the summary judgment, we cannot help noting that, even if appellant had made it past the summary judgment motion, the problems it would then have faced on an unjust enrichment claim would appear to be insurmountable. In this context, we first address the absence of a written contract between appellant and appellee and the relationship between that fact and the County's governmental immunity.

As in the case at bar, there was no written contract between appellant and appellee in *Leese v. Baltimore County,* 64 Md.App. 442, 477–79, 497 A.2d 159, *cert. denied,* 305 Md. 106, 501 A.2d 845 (1985), where we opined:

Where a county is attempting to assert governmental immunity as a bar to a contract claim, the common law allows it to "abrogate its responsibility under a contract entered into in performance of a governmental function if dictated by the public good." *American Structures, Inc. v. Baltimore,* 278 Md. 356, 359, 364 A.2d 55 (1976). This is not to suggest that counties and municipalities are fully immun-

ized against contractual liability. Rather, they are "answerable in damages incurred to the time of cancellation." *Id.*

This common law contract immunity, however, is limited by statute. Under § 1A, Article 25A, Annotated Code of Maryland, "a chartered county ... may not raise the defense of sovereign immunity ... in an action in contract based upon a written contract executed on behalf of the county or its department, agency, board, commission or unit by an official or employee acting within the scope of his authority." Md.Code Ann. Art. 25A, § 1A(a) (1984 Supp.). *See also* Md. State Gov't Art. § 12–202 (1984); Md.Code Ann. Art. 25, § 1A (1984 Supp.).

. . . .

... His attempted reliance upon Section 1A to avoid sovereign immunity is misplaced. By its terms, Section 1A requires a *"written contract"* that was "executed on behalf of the county." A failure to meet either of these requirements nullifies the operation of the section. [Emphasis added.]

We discussed similar statutory language applicable to the State's waiver of immunity in contract cases where unjust enrichment was at issue in *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md.App. 766, 770, 471 A.2d 1121 (1984), noting:

Our review of the facts persuades us that MTA was not *unjustly* enriched; and an analysis of the parties' arguments pertaining to the doctrine of sovereign immunity and the principle of unjust enrichment leads us to conclude that, in this case at least, the two concepts are sufficiently incompatible to bar recovery by Granite. In order to steer a course safely past Scylla (the State's waiver of sovereign immunity is limited to claims based on *written* contracts), appellee would have to sail into the maws of Charybdis (the principle that unjust enrichment does not apply if there is a written contract).

We explained:

"The doctrine of sovereign immunity from suit, rooted in the ancient common law, is firmly embedded in the laws of

Maryland." *Katz v. Wash. Suburban Sanitary Comm'n,* 284 Md. 503, 507, 397 A.2d 1027 (1979); *Austin v. City of Baltimore,* 286 Md. 51, 53, 405 A.2d 255 (1979). "If an action is brought for a money judgment in contract or in tort against the State or an agency of the State without the State's consent, actual or implied, it must be defended on the ground of sovereign immunity, which cannot be waived unless funds have been appropriated for the purpose or the agency can provide funds by taxation...." *American Structures v. City of Baltimore,* 278 Md. 356, 359, 364 A.2d 55 (1976) (citations omitted).

... It has since been partially abrogated or waived. Chapter 450 of the Laws of 1976, originally codified as art. 41, § 10A of the Annotated Code of Maryland, subsequently recodified as Md.Ann.Code art. 21, §§ 7–101 through 7–104,[3] prohibits the State and its officers, departments, agencies, boards, commissions or other units of State government from raising the defense of sovereign immunity in the courts of this State "in an action in contract based upon a written contract executed on behalf of the State, or its department, agency, board, commission or unit by an official or employee acting within the scope of his authority." [Footnote omitted.]

*Id.* 57 Md.App. at 773, 471 A.2d 1121.

We then noted the elements of unjust enrichment:

1. A benefit conferred upon the defendant by the plaintiff;

2. An appreciation or knowledge by the defendant of the benefit; and

3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value....

. . . .

---

**3.** Md.Code (1957, 1994 Repl.Vol.), Art. 25A § 1A(a) and 25B § 13A(a) now contain the same provisions for county governments.

A quasi-contract or implied in law contract, on the other hand, involves no assent between the parties, no "meeting of the minds." Instead the law implies a promise on the part of the defendant to pay a particular "debt." *See* 1 Palmer, *supra,* § 1.2. Thus, "[t]he implied in law contract is indeed no contract at all, it is simply a rule of law that requires restitution to the plaintiff of something that came into defendant's hands but belongs to the plaintiff in some sense." ...

It should also be remembered that a money judgment recovered by virtue of [a] quasi-contract is a remedy to prevent against the unjust enrichment of the defendant. Thus, the measure of the recovery is the gain to the defendant, not the loss by the plaintiff.

*Id.* at 774–75, 471 A.2d 1121 (footnote omitted). We concluded:

## THE SOVEREIGN IMMUNITY—UNJUST ENRICHMENT DILEMMA

Even if we were persuaded that MTA had been unjustly enriched to the extent of Granite's gas line relocation work, we would be forced to conclude that sovereign immunity would be a complete bar to recovery.

As we have seen, sovereign immunity bars recovery unless waived or abrogated by the State and that the State has waived the defense only with respect to those contract claims which are "based upon a written contract executed on behalf of the State, ... by an official or employee acting within the scope of his authority." Md.Ann.Code, art. 21, § 7–101. We have also seen that recovery for unjust enrichment is based upon an implied in law contract. The two concepts are incompatible. However meritorious a claim based upon an implied contract may be, if that claim is against the State or any of its agencies, it is barred because it is not based upon a written contract. In this case, it would also be barred because it is allegedly based upon a contract implied as a result of conduct on the part of an

employee who was acting outside the scope of his employment.

Appellee seeks to avoid the bar of sovereign immunity by arguing that its claim is really based on or derived from the $36,283,000 written subway construction contract that was duly executed by an authorized agent of MTA and duly performed by Granite over a period of two-and-a-half years. But that attempt to steer the claim away from the rock ran it directly into the whirlpool. The only way that Granite's unjust enrichment claim can be said to be based upon a written contract is to recognize the written subway construction contract as one "dealing specifically with the services rendered," in which case recovery on a *quantum meruit* basis is unavailable.

*Id.* at 780–81, 471 A.2d 1121.

In the case *sub judice*, if appellant's claim against appellee is based on a written contract, then there can be no unjust enrichment. If it is not based on a written contract, appellee has not waived its sovereign immunity and may well be immune from the claim.

We discern, moreover, that, irrespective of the inherent incompatibility of appellant's claim, it did not present a claim for unjust enrichment for several other reasons we hereafter address.

In its motion for summary judgment, appellee alleged that the plaintiff "claims that Montgomery County ... is liable for these unpaid debts [the debts of Aldre] because of the County's alleged failure to [comply with] ... the Maryland Little Miller Act...." As to the only issue appealed to us, appellant responded:

(b) *Unjust Enrichment*

All of the conditions specifications, performances ... for which the County stipulates in its Public Improvement Contracts, a finding[,] the cost of which the subcontractors in the first instance pay, provide a basis for a finding that the County has been unjustly enriched.

After the County's motion was granted, appellant filed a Motion to Alter or Amend, attempting to have the trial court modify its order to apply only to Counts I through IV, leaving Count V "Unjust Enrichment" as a triable issue. In its Motion to Alter, appellant based its argument, in part, on certain provisions in its complaint, *i.e.*, "[t]hat the Day Company ... performed but was not paid for the public improvements ... is continually being prejudiced by its inability to avail itself of any lien rights...." Appellant also stated in its motion that "[t]he Defendant continues to benefit by the Plaintiff's work on ... all of the non lienable projects. The work by the Plaintiff ... [is] not lienable and the Plaintiff has no other source of recovery but for its claim of unjust enrichment;" "[t]here is an issue of fact whether Plaintiff knew ... of the rudiments of the development process and whether Plaintiff knew ... that it might end up performing work in the public improvement area without compensation;" and "[a] genuine factual dispute therefore exists whether this work was amenable to Plaintiff's assertion of mechanic's lien rights."

There were no other assertions of factual dispute made as to "unjust enrichment." Appellant, through deposition testimony (and attachments), proffered the bills that appellant had submitted to the developer as proof, presumably, of the County's unjust enrichment. Nowhere did appellant ever proffer an appraisal of the value, if any, of the improvements to the County. Its claim related entirely to the sums that appellant had failed to recover from Aldre.

In argument, appellant's counsel, when asked to identify the disputed facts, said:

Well, the limitations ... is a disputed fact.

. . . .

... [A] substantial issue, of unjust enrichment....

... I don't believe that the legislature knew or had in mind, when they put in [the Little Miller's Act] that provision with respect to lien rights....

. . . .

... I don't think that the legislature [in passing the Little Miller Act] really had in mind that a subcontractor ... would get stiffed in the hundreds of thousands of dollars....

. . . .

... [I]s the county really awarding a construction contract to a developer in excess of $50,000 [a precipitating factor under the Little Miller Act]? We say that it is, and we say that on that basis we should prevail on summary judgment....

. . . .

... [I]s this really a Little Miller Act situation.... [A]re they skirting the provisions of the Little Miller Act....

The trial court then noted: "[T]he mere fact that one party benefits ... is not sufficient to sustain a count for unjust enrichment. There has to be some injustice in permitting the county ... to retain ... the ... improvements...."

Appellant responded:

They are unjustly enriched because they had a right ... to go against the performance bond....

. . . .

... [I]f the performance bond is there for the County to get the work done, the performance bond was there for the County to pay my client.

... *[T]he unjust enrichment comes from the fact that my client ... has performed hundreds of thousands of dollars of work and hasn't been paid....*

So there are questions of fact that need to be decided....

. . . .

... [A]nd we didn't get paid.

The public, the County, has the benefit of all of that and they had a right to go against the performance bond *to pay my client*, and they didn't exercise that right. So they have been unjustly enriched....

. . . .

They took that money [performance bond], and they got the work done, when in fact they should have taken some of the money to take care of the subs, including my client. . . .

. . . .

We did the work and we didn't get paid. . . .

. . . .

. . . There is no dispute that my client hasn't been paid.

Appellee's attorney then states: "I am unsure really what the injustice is that the plaintiff asserts." Appellant's counsel responded: "They didn't get paid."

Judge Bishop noted for us in *First Nat'l Bank v. Shpritz,* 63 Md.App. 623, 640, 493 A.2d 410 (1985):

The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution. . . . "A person who officiously confers a benefit upon another is not entitled to restitution therefor." . . . It is therefore clear that, while "a person is enriched if he has received a benefit," the law does not consider him *unjustly enriched* unless "the circumstances of the receipt of the benefit are such as between the two that to retain it would be unjust." [Citations omitted.]

*See also Yost v. Early,* 87 Md.App. 364, 386–87, 589 A.2d 1291, *cert. denied,* 324 Md. 123, 596 A.2d 628 (1991).

We utterly fail to see how, based upon the record before us, appellee is even enriched by this traditional arrangement for subdivision infrastructure construction and its subsequent dedication (or offer of same) to the County. There is no evidence in the record before us that Montgomery County has received any benefit that would outweigh the obligation it would assume were it to accept the dedication, *i.e.,* the obligation to maintain, improve, regulate and police the property received, and there was no proffer before the hearing court that any such "net" benefit would even occur or that any evidence of such a benefit could be adduced. These obligations, once accepted, are open-ended in that the obligation is permanent. It appears, given the life of most such improve-

ments, that over the long term possession by the County the costs it will incur in meeting its obligation will far surpass the initial value, if any, of the improvements received.

We note further that we see nothing *unjust* about a governmental entity requiring developers to provide infrastructure to meet the needs of the potential inhabitants of the proposed development.[4]

In an unjust enrichment case arising out of a dispute over contingent legal fees between three attorneys that had at various times represented one client, the Superior Court of Pennsylvania in *Styer v. Hugo*, 422 Pa.Super. 262, 619 A.2d 347, 350 (1993), *aff'd*, 535 Pa. 610, 637 A.2d 276 (1994), commented:

> In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.
>
> Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is *unjust*. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. [Citations omitted.]

*See also Zvonik v. Zvonik*, 291 Pa.Super. 309, 435 A.2d 1236, 1239 (1981) (In order for there to be unjust enrichment, there must be both enrichment and *injustice*.)

> [T]he most significant requirement for recovery on a quasi contract is that the enrichment to the defendant must be *unjust*; the reason is that our courts focus not on the intention, but on the result of unjust enrichment. [Citations omitted.]

*Id.* The case at bar, as we perceive it, presents neither enrichment nor injustness.

---

4. In light of *Dolan v. City of Tigard*, —— U.S. ——, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), a requirement placed upon a developer to address needs beyond those generated by the specific development may run afoul of "takings" jurisprudence.

While, as we have indicated, we have not heretofore addressed unjust enrichment claims in the context of county-imposed requirements for subdivision developers and the developer's interactions and agreements with its subcontractors, this issue has been addressed, in a manner we deem persuasive, by the appellate courts of Pennsylvania.

Subdivision statutes similar to those in Montgomery County existed in *Meehan v. Cheltenham Township*, 410 Pa. 446, 189 A.2d 593 (1963), where a statute required a developer to construct streets and other infrastructure facilities and, upon completion, dedicate them to public use, *i.e.*, to Cheltenham Township. There, Meehan was hired by the developer, performed construction services, and thereafter was not paid because of developer's insolvency. Ultimately, the facilities were in fact dedicated to the Township. Meehan instituted suit against the Township alleging unjust enrichment and asserting

that appellee has been enriched by the acquisition of a sewer and road system which has enlarged its revenues through rents from the use of the sewers and increased real estate taxes on the improved lands.... "[T]he Township cannot in justice refuse to compensate appellant for the fair market value of the same."

*Id.* 189 A.2d at 595. The court responded:

In order to recover, there must be both (1) an enrichment, and (2) and injustice resulting if recovery for the enrichment is denied.... This basis for recovery misconceives both the role of appellee in the construction of the improvements, and also the nature of the unjust enrichment doctrine.

The construction of these improvements was *not* performed at appellee's request. Appellee initially entered the transaction solely because the First Class Township Code requires that a developer obtain township approval of the subdivision plan in order to insure the safe and harmonious development of the township. Later, the improvements were dedicated to the township. Whether this act of dedica-

tion resulted in a financial benefit to appellee is not clear since the cost of maintaining and repairing the improvements might offset any revenues obtained therefrom. In any event, appellant cannot merely allege its own loss as the measure of recovery—*i.e.*, the value of labor and materials expended—but instead must demonstrate that appellee has in fact been benefitted.

. . . .

... [I]n the absence of some misleading by the third party, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party. . . .

... In contracting to perform the services in question, appellant relied solely on the financial credit of Novak. Appellee in no way induced appellant to enter into this relationship. In such a situation, appellant cannot shift the loss resulting from its error in judgment to one who may have been indirectly benefitted by the performance of these services.

*Id.* at 595–96 (citations and footnotes omitted).

A somewhat similar scenario between a subcontractor, developer, and lender existed in the more recent Pennsylvania case of *D. A. Hill Co. v. CleveTrust Realty Investors*, 524 Pa. 425, 573 A.2d 1005, 1006 (1990), where the issues included:

[W]hether subcontractors who have furnished services on a construction project, but who have not been paid . . . can recover on an unjust enrichment theory against a lending institution which foreclosed on the project after the owner defaulted on the construction loan.

The court noted that the subcontractors had been hired by the general contractor and that the lending institution had no knowledge "of who the subcontractors were or which of the forty-eight categories any of them had been placed in." *Id.* 573 A.2d at 1007. Ultimately, the lender foreclosed on the project and bought it at the sale. Five years later, the subcontractor filed a suit for unjust enrichment. The bank responded that, because the value received was less than the

amounts it had disbursed, it had not been enriched and, in any event, any enrichment was not unjust.

> The court noted that it had previously held that
>
> in a case where a subcontractor has provided services and chattels to an owner who had no direct contractual relationship to the subcontractor, (1) any benefit conferred must, for purposes of recovery on an unjust enrichment theory, be measured by the value of the benefit to the owner, not by the value of the invoice submitted by the subcontractor; and (2) the owner's retention of the benefit without paying any compensation to the subcontractor would not be unjust if the owner did not contract directly with or mislead the subcontractor.
>
> ... [T]he value of the invoices is not a proper measure of enrichment.

*Id.* at 1009.

> There is no evidence ... that CleveTrust either requested anything from the subcontractors or misled anyone; in fact, it did nothing more than exercise its rights.... The subcontractors ... went forward without being protected by a performance bond. These decisions were business calculations which carried a certain amount of risk. It would be manifestly unfair for this Court to restructure these contractual arrangements in such a way as to place all of the risk on CleveTrust, thus insulating the subcontractors from any responsibility for their own decisions and making CleveTrust, in effect, the insurer of the subcontractors' interests.

*Id.* at 1010 (footnote omitted).

We hold, as the Pennsylvania court held in *Meehan*, that appellant's theory of recovery in the present case misconceives both appellee's role in appellant's transactions with Aldre and the "unjust enrichment" doctrine. We note the Third Circuit's decision in *Berman v. Herrick*, 346 F.2d 116, 117 (3d Cir.), *cert. denied*, 382 U.S. 892, 86 S.Ct. 185, 15 L.Ed.2d 150 (1965), where it held, in a case involving the installation of improvements at a tenant's request without the knowledge of the landlord, "that the plaintiffs' proof on the issue of enrichment

was insufficient to sustain an award of damages...." The court stated:

> [T]he plaintiffs undertook to prove the fair price of the work they performed, rather than how much the value of the building was increased.... There was no evidence of any amount or amounts by which the value of the building was increased.... [I]t seems likely that ... [the labor and materials that plaintiffs provided] resulted in some increase in value.... However, on the present record the dollar value of any such economic benefit ... [is] wholly speculative.

*Id.* at 118. *See also Beco Construction Co. v. Bannock Paving Co.*, 118 Idaho 463, 797 P.2d 863 (1990), where one construction company, that would otherwise have received the contract at issue but for the other construction company's fraudulent representation to the owner (the Department of Energy), sued the defrauding company in unjust enrichment. The court noted that "the measure of recovery ... is not the actual amount of the enrichment [if that is proven], but the amount of enrichment which, as between the two parties it would be unjust for one party to retain." *Id.* 797 P.2d at 866. It later cited *Gillette v. Storm Circle Ranch*, 101 Idaho 663, 619 P.2d 1116, 1120 (1980), for the additional proposition that

> [u]njust enrichment is an equitable doctrine and is inapplicable where the plaintiff in an action fails to provide the proof necessary to establish the value of the benefit conferred upon the defendant.

*Id.*

As is clear from our extensive inclusion of excerpts from the trial court proceedings and pleadings, appellant's case was initially predicated almost exclusively on alleged violations of the Little Miller Act. To the extent its unjust enrichment claim was not exclusively based on the Little Miller Act, it was based solely on appellant's assertions that it had not been paid by Aldre and could not obtain a lien against the properties because of either the Act or bankruptcy provisions and, thus, appellee should pay appellant because, ultimately, appellee

was to get the roads. It is also clear that appellant's theory of the value of the enrichment was based solely on appellant's loss, *i.e.*, its loss equaled appellee's enrichment. As we have indicated, this is not the law.

We hold that statutorily created subdivision regulations and agreements executed pursuant thereto that (1) require the construction of infrastructure necessitated by and limited to the needs and demands generated by the potential inhabitants of the proposed subdivision, and (2) require or permit the subsequent dedication of that infrastructure to an appropriate governmental entity do not generally result in either enrichment to that entity or unjustness involving the governmental entity. Moreover, no cause of action for unjust enrichment results even when the subdivision developer fails to perform its contractual payment obligation to the subcontractor.

In light of our decision, we need not further address any other issues.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.