651 A.2d 442

**RICHARD F. KLINE, INC.**

v.

**SIGNET BANK/MARYLAND.**

**No. 618, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Jan. 4, 1995.

Phillips P. O'Shaughnessy, Baltimore, for appellant.

Brian C. Parker (Gebhardt & Smith, on the brief), Baltimore, for appellee.

Argued before WENNER, CATHELL and MURPHY, JJ.

WENNER, Judge.

Richard F. Kline, Inc. (Kline) appeals from a judgment of the Circuit Court for Frederick County. On appeal, Kline presents but one question:

> "Whether Kline has a cause of action against Signet for unjust enrichment when Kline continued to perform valuable work on a real estate development project after Signet had declared the developer in default, but when Kline had not received notice of this, and when Signet was aware of Kline's on-going work, paid no one for it, and recorded an increase in the value of its collateral in the project of $900,000.00 before Kline became aware of the Signet declaration of default and stopped work?"

We shall answer "no," and affirm the judgment of the circuit court.

## FACTS

In 1990, a partnership, Coventry Venture Associates [1] (Coventry), was formed for the purpose of developing a project in Frederick County known as Lake Coventry. To finance the project, Coventry received a construction loan from Signet. Coventry then subcontracted with Kline for excavation, paving, and utility work. Before entering into the contract, Kline contacted Signet to ensure that the project's budget was sufficient to cover the work to be performed by Kline. Receiving an affirmative answer, Kline entered into a contract with Coventry and work progressed without incident until 1991.

The year 1991 began with the two individuals most involved in the Coventry partnership accusing one another of various improprieties. Consequently, Signet notified Coventry that it would disburse no more funds from the interest reserve account to pay interest on the loan until the dispute was settled. When Coventry failed to make the interest payments,

---

1. Coventry comprised two corporations and a limited partnership, but only two individuals were involved in the partnership.

Signet declared the loan to be in default.[2] Signet subsequently instituted foreclosure proceedings, and placed an advertisement of the foreclosure sale in the local newspaper. Coventry brought the interest up-to-date prior to the sale, however, and Signet cancelled the foreclosure sale. Signet then began negotiating a new agreement with Coventry.

During these negotiations, Kline proceeded with the work required by its contract with Coventry until Coventry failed to make the April 1991 progress payment. Kline stopped work on the project in June 1991, and sought a mechanic's lien on the project. And, unable to reach a new agreement with Coventry, Signet resumed foreclosure proceedings. Before Kline could obtain a mechanic's lien, Coventry entered into bankruptcy, although Signet was granted relief from the automatic stay and proceeded with the foreclosure sale. At the foreclosure sale in April 1992, a subsidiary of Signet purchased the property. Shortly after it purchased the project, it was sold by the subsidiary at a substantial loss. Signet ultimately lost approximately $2,500,000 on the project.

Having been unable to obtain a mechanic's lien, Kline filed a complaint in the Circuit Court for Frederick County seeking to recover from Signet the total sums unpaid under its contract with Coventry. Kline and Signet moved for summary judgment. In an Opinion and Order filed on 7 March 1994, the circuit court granted Signet's motion for summary judgment and denied Kline's. Kline then noted this appeal.

## DISCUSSION

When reviewing the grant of a motion for summary judgment, we must determine whether the trial court was legally correct in granting the motion. *Heat & Power v. Air Products*, 320 Md. 584, 592, 578 A.2d 1202 (1990). "All inferences must be resolved against the moving party when a

---

2. At her deposition, Ellen Boyer, an employee of Signet, testified that Coventry presented none of Kline's invoices while Signet's loan was in default. In any event, Ms. Boyer testified that Signet would not have paid any such invoices while the loan was in default.

determination is made as to whether a factual dispute exists. This is true even if the underlying facts are undisputed." *Berkey v. Delia,* 287 Md. 302, 304–305, 413 A.2d 170 (1980). On the other hand, a claim of unjust enrichment requires a trial court to determine whether a contract between the parties should be implied as a matter of law; in other words, whether a quasi contract exists. Where the facts are undisputed, whether a quasi contract exists is a question of law that may be decided on a motion for summary judgment. *Bloomgarden v. Coyer,* 479 F.2d 201, 211 (D.C.1973).

## I.

■ We have not before considered an unpaid subcontractor's claim that a construction lender was unjustly enriched where the subcontractor was unable to obtain a mechanic's lien or seek damages for breach of contract because the general contractor was in bankruptcy. As we said in *Everhart v. Miles,* 47 Md.App. 131, 136, 422 A.2d 28 (1980):

Unjust enrichment is defined as

the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience. A person is enriched if he has received a benefit, and he is unjustly enriched if retention of the benefit would be unjust. Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another.

See 66 AmJur2d Restitution and Applied Contracts, § 3 (1973) (footnote omitted).

The situation we are here facing, however, differs from that in *Everhart v. Miles* because Signet neither owned nor retained the Lake Coventry project. Signet's construction loan was secured by a mortgage on the project.

In *Yost v. Early,* 87 Md.App. 364, 589 A.2d 1291 (1991), we recently reiterated the three part test for unjust enrichment:

Under Maryland law, to sustain a claim under the doctrine of unjust enrichment, three elements must be established:

1. A benefit conferred upon the defendant by the plaintiff;

2. An appreciation or knowledge by the defendant of the benefit; and

3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Id.* at 387, 589 A.2d 1291. Kline contends that the doctrine of unjust enrichment applies in the case at hand, even though Signet did not own the property on which Lake Coventry was being developed. Consequently, we shall address whether Kline's claim for unjust enrichment is appropriate under the circumstances now before us.

## II.

The circuit court found that the requirements for establishing unjust enrichment set out in *Yost* were controlling. In endeavoring to determine the meaning of "benefit" and "unjust" as used in *Yost,* and finding no Maryland precedent, the circuit court relied upon *Meehan v. Cheltenham Township,* 410 Pa. 446, 189 A.2d 593 (1963) and *D.A. Hill Co. v. CleveTrust Realty,* 524 Pa. 425, 573 A.2d 1005 (1990). Interestingly enough, we considered *Meehan* and *D.A. Hill* when concluding, in *Francis O. Day Co., Inc. v. Montgomery County,* 102 Md.App. 514, 650 A.2d 303 (1994), that *Meehan* correctly enunciated the doctrine of unjust enrichment. *Id.* at 529, 650 A.2d 303.[3]

---

**3.** Other jurisdictions have similarly restricted a claim of unjust enrichment by a subcontractor against a lender to specific situations. For example, a claim of unjust enrichment will not lie where the lender has paid the general contractor in full, even though the general contractor did not subsequently pay the subcontractor. *Jordan v. Lone Pines, Ltd.,* 41 Colo.App. 152, 580 P.2d 1273, 1274–75 (1978) ("There is no injustice in holding that the lender, who has paid once, need not pay a second time."). Moreover, a claim of unjust enrichment will not ordinarily lie where construction was only partially completed when the default and foreclosure occurred, because the "market value of a partially constructed building will be substantially less than the total

The *Meehan* court began by describing unjust enrichment as requiring proof of one party's enrichment, resulting in an injustice to the other party should recovery be denied. This description of the doctrine of unjust enrichment is consistent with a number of Maryland cases. *Plitt v. Greenberg*, 242 Md. 359, 219 A.2d 237 (1966); *Everhart v. Miles, supra*; *Mass Transit Admin. v. Granite Construction*, 57 Md.App. 766, 471 A.2d 1121 (1984). The *Meehan* court then went on to explain that a party seeking recovery under the doctrine of unjust enrichment must "demonstrate that the [the third party] has in fact been benefitted;" merely alleging one's own loss is not enough. *Meehan, supra* 189 A.2d at 595. The *Meehan* court also noted that "in the absence of some misleading by the third party, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party." *Id.* at 596.

The *D.A. Hill* court was presented with a situation very similar to that in the case at hand. Contemplating whether a subcontractor could recover against the holder of the construction mortgage, the *D.A. Hill* court expanded upon *Meehan* by concluding that a "third party is not unjustly enriched when it receives a benefit from a contract between two other parties where the party benefitted has not requested the benefit or misled the other parties," *id.* 573 A.2d at 1010, and opined that it would be "manifestly unfair" for a court to make the construction mortgage lender an "insurer of the subcontractors' interests." *Id.*

Kline asserts that *Meehan* and *D.A. Hill* are not consistent with the test laid out in *Yost*. According to Kline, *Yost* requires that a party need only show that the third party knew of or appreciated the benefit. We think it clear, however, that *Yost* also requires retaining the benefit to be unjust.

---

cost of the labor and material which has already been incorporated into its construction." *J.G. Plumbing Service, Inc. v. Coastal Mortgage Co.*, 329 So.2d 393 (Fla.App.1976); *See also Edd Helms Electrical Contracting, Inc. v. Barnett Bank*, 531 So.2d 238, 239 (Fla.App.1988) ("Unjust enrichment cannot be established by alleging merely substantial completion.").

Discussing only what may be considered just and unjust under circumstances similar to those in the case at hand, neither *Meehan* nor *D.A. Hill* conflicts with *Yost.*

Summary judgment is appropriate in the case at hand. Kline and Signet concede that the material facts are not in dispute. Consequently, the circuit court concluded that Kline failed to establish a claim for unjust enrichment, entitling Signet to judgment as a matter of law. Specifically, the circuit court concluded that Kline had neither established that Signet had received a benefit nor, assuming that Signet has received a benefit, that Signet's retention of the benefit was unjust. We agree.

Kline contends that Signet's in-house watch list reports establish an increase of $900,000 in the value of the Lake Coventry project from the work done by Kline in Spring 1991. It is clear, however, after reviewing all of Signet's Spring 1991 watch list reports, that the increase of $900,000 attributed by Kline to its work occurred before completion of the majority of Kline's work.[4] In effect, Kline has shown only that it has not been paid for its early 1991 work on the Lake Coventry project. Thus, the circuit court correctly concluded that Kline had failed to establish that Signet had been unjustly enriched.

■ Kline also contends that Signet had a duty to notify Kline that Coventry had defaulted on the loan. Having failed to do so, Kline contends that it would be unjust to allow Signet to retain the funds Kline had earned during early 1991. As we see it, Signet had no such duty. If a project has not been completed, and the construction lender has not fully disbursed funds for the work completed, an unpaid subcontractor may

---

4. Kline cites two of Signet's watch list reports. One issued in February 1991, which valued the property at $4,847,100; and one issued in June 1991, which valued the property at $5,787,000. Kline offers the $900,-000 difference as proof that Lake Coventry's market value had increased due to Kline's work; hence, enriching Signet. Kline has failed to consider, however, that the reports issued in April and May 1991, valued Lake Coventry at $5,787,000. Thus, Signet's watch list reports consistently valued the property at $5,787,000 before and after Kline had completed the bulk of its Spring 1991 work.

not support its claim for payment from those funds merely by asserting that the construction lender failed in its duty to notify the subcontractor of a default, because no such duty exists. *See J.G. Plumbing Service, Inc. v. Coastal Mortgage Co.*, 329 So.2d 393 (Fla.App.1976); *See also Town Concrete Pipe of Washington v. Redford*, 43 Wash.App. 493, 717 P.2d 1384, 1388 (1986). To require otherwise, would no doubt make it more difficult for developers to obtain construction loans.

■ Moreover, Signet did not mislead Kline. We agree with the *Meehan* and *D.A. Hill* courts that, in order for a subcontractor's claim of unjust enrichment to succeed against a construction lender, the subcontractor must show that it was in some way induced by the construction lender to continue its work. In the absence of such a showing, a claim of unjust enrichment does not exist.

Finally, we point out that Kline admits it did not keep abreast of foreclosure sales advertised in the local newspaper and was, therefore, unaware of Signet's advertisement of the foreclosure.[5] Consequently, even had Kline shown that a

---

5. The following colloquy occurred at the hearing on the motions for summary judgment, exhibiting the circuit court's disbelief that Kline had failed to see the foreclosure notice in the local newspaper.

Court: You're telling me Kline didn't know about the advertisement—

Counsel for Kline: That is the testimony of Kline's designated witness, under oath, not controverted in this case.

Court: How could Kline miss—

Counsel for Kline: Because he doesn't have someone whose job it is to read foreclosure notices.

\* \* \* \* \* \*

Court: Well, I think if you look in the morning paper, there's probably three foreclosures.

Counsel for Kline: But the question is, you know, are you reading it for that purpose, and folks read newspapers for different things. There is nothing that would have stopped—

Court: But that's the great sport in Frederick County. There's only three there, I mean—

Counsel for Kline: Well, Your Honor, you're more of a player here than I am, there's no doubt about that.

Court: Yeah, but—and Kline's more of a player than I am.

**736**

benefit had accrued to Signet, the circuit court would have been correct in concluding that the benefit was not unjust.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**