*AAC HP Realty, LLC v. Bubba Gump Shrimp Co. Restaurants, Inc.*, No. 1076, Sept. Term, 2018.   Opinion by Arthur, J.

**QUASI-CONTRACT – UNJUST ENRICHMENT – PRESENCE OF AN EXPRESS CONTRACT**

Generally, a quasi-contractual claim cannot arise when an express contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests. Potential exceptions to this prevailing rule include when there is evidence of fraud or bad faith in the formation of the contract or when the express contract does not fully address the subject matter of the quasi-contractual claim.

In this case, the trial court erred in relying on those exceptions to award the plaintiff damages on its claim for unjust enrichment, despite a lease between the plaintiff and the defendant.  The trial court found that the defendant acted in bad faith when it breached the lease, but did not find that the defendant acted in bad faith upon entering into the contract.  Further, the lease fully addressed the consequences of defendant's breach and provided the plaintiff with an adequate remedy of damages for breach of contract. Therefore, a claim of unjust enrichment was unavailable to the plaintiff.

Circuit Court for Baltimore City
Case No. 24-C-16-005889

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1076

September Term, 2018

_____

AAC HP REALTY, LLC,

V.

BUBBA GUMP SHRIMP CO.
RESTAURANTS, INC.

_____

Arthur,
Leahy,
Kenney, James A., III
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed:  October 31, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Bubba Gump Shrimp Co. Restaurants, Inc. ("Bubba Gump"), filed suit against AAC HP Realty, LLC ("AAC"), alleging that AAC breached its obligation to maintain the common areas under a comprehensive written lease between the parties. After a bench trial, the Circuit Court for Baltimore City found that AAC breached the lease and awarded Bubba Gump damages for certain out-of-pocket costs and attorney's fees, as provided in the lease. The circuit court, however, denied Bubba Gump's demand for lost profits, because Bubba Gump had failed to prove those damages with reasonable certainty. Nonetheless, the circuit court went on to award Bubba Gump an "equitable rent reduction" on a quasi-contractual claim for unjust enrichment.

AAC appealed the award of damages on the claim for unjust enrichment. We shall reverse that aspect of the judgment.

### FACTUAL AND PROCEDURAL HISTORY

We recount the pertinent facts in the light most favorable to Bubba Gump, the party that prevailed at trial. *Green v. McClintock*, 218 Md. App. 336, 341 (2014) (citing *L.W. Wolfe Enters., Inc. v. Maryland Nat'l Golf, L.P.*, 165 Md. App. 339, 343 (2005)).

In the spring of 2011, Bubba Gump, a seafood restaurant owned by Landry's, Inc.,[1] entered into a lease at Harborplace in Baltimore City with AAC's predecessor. AAC acquired its interest in the lease in November 2012, about six months after Bubba Gump began operating at Harborplace.

---

[1] Landry's owns over 35 restaurant brands and 600 restaurants that operate across the country.

The lease is over fifty pages in length, with several exhibits. It includes many provisions specifically defining the various rights and obligations of the landlord and tenant.

Article 4 of the lease sets forth Bubba Gump's obligation to pay a "Minimum Annual Rental," in twelve, equal monthly installments, for its use and occupancy of the leased premises. The Minimum Annual Rental exceeds $1 million, or $83,000 a month. The rent is to be paid "without deduction or set-off."

The Minimum Annual Rental includes the "Joint Use and Operating Expenses" that Bubba Gump is required to pay under Article 17 of the lease. According to the executive who negotiated the lease on Bubba Gump's behalf, Bubba Gump contracted to include these expenses in the fixed monthly rent, as opposed to paying a lower monthly rent and separate common-area maintenance charge.[2] Bubba Gump describes those payments as advance payments in exchange for the landlord's commitment to maintain the common areas, which are termed the "Joint Use Areas" under the lease.

Article 17 of the lease requires AAC to keep the Joint Use Areas in "good order and repair." Under Article 17, AAC, "in its sole and absolute discretion," may appropriate any portion of the monthly rent toward the expenses of maintaining the Joint Use Areas. Those expenses, which are termed "Operating Expenses," "consist of all

---

[2] The commercial real estate industry commonly refers to these payments as "CAM" charges. Bubba Gump prefers to incorporate those charges into the fixed monthly rental to simplify its costs and to allow the company to "focus on [its] business." According to Bubba Gump, the Joint Use and Operating Expenses represented about 20.45 percent of its monthly payment obligation under the lease.

expenditures relating to operating, managing, equipping, policing, protecting, lighting, repairing, cleaning, replacing and maintaining the Joint Use Areas in the same or improved condition as when originally installed."

Shortly after it began its operations at Harborplace in 2012, Bubba Gump observed that the landlord was not maintaining the property in good order and repair. At trial, the restaurant presented ample evidence of poor conditions in the common areas, including water leaks, hanging wires, dirty bathrooms, broken concrete, chipping and peeling paint, escalators that did not work, planters containing trash and debris, rusted metal stairs, and rodent infestation.

At first, Bubba Gump continued to pay its rent, but it implored AAC to fulfill its obligation to maintain the property in good order and repair. When Harborplace remained in a substandard state, and when the restaurant's revenue fell below expectations, Bubba Gump asked AAC to reduce its monthly rent. The parties eventually agreed to a temporary, three-month reduction of the monthly rent, which they memorialized in an amendment to the lease in March 2015.

Still unsatisfied with Harborplace's condition, Bubba Gump began to withhold its rent payments in the fall of 2015. Although Bubba Gump eventually paid all of the back rent in September 2016, it sent a letter to AAC claiming that the landlord had breached the lease because of its failure to maintain the property.

On November 7, 2016, Bubba Gump commenced this litigation. In a five-count amended complaint, Bubba Gump asserted claims for breach of contract, breach of the

3

covenant of quiet enjoyment, and unjust enrichment, a request for declaratory relief, and a claim for specific performance.

During a six-day bench trial, the trial court heard testimony from several witnesses regarding the conditions of Harborplace during the lease term. Photographs documenting the deterioration of the shopping center were admitted into evidence as well. Bubba Gump's expert witness testified about the poor state of the property and its effect on foot traffic and sales. Bubba Gump principally claimed to have suffered lost profits of approximately $2.5 million as a result of AAC's breach of the obligation to keep the common areas in "good order and repair."

On June 14, 2018, the circuit court announced its decision. The court agreed that AAC had breached its obligations to keep the common areas in good order and repair and to police and protect Harborplace. The court awarded Bubba Gump $32,300 for out-of-pocket security costs because of AAC's breach and $5,000 in attorney's fees as the prevailing party, pursuant to Article 28 of the lease. The court, however, declined to award lost profits, because "too many uncertain changing conditions and a multitude of factors" prevented Bubba Gump from proving the damages with reasonable certainty.

Although Bubba Gump could not satisfactorily prove the profits that it had lost because of the breach of contract, the circuit court went on to award Bubba Gump $1,096,270.51 as an "equitable rent reduction" under the unjust enrichment claim in the amended complaint. The circuit court arrived at this award by calculating 20.45 percent of Bubba Gump's gross rent for the period from 2013 through 2017. The 20.45 percent figure represented the portion of the rent payment that Bubba Gump attributed to its

obligation to pay the Operating Expenses for the maintenance of the Joint Use Areas. *See supra* n.2. The court explained that it had rendered that award as an "alternative" to the claim for lost profits.

In awarding the "equitable rent reduction," the court acknowledged the general rule that unjust enrichment is unavailable when the parties have an enforceable contract, but it cited *County Commissioners of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83 (2000), for the proposition that a claim for unjust enrichment may lie when there is evidence of fraud or bad faith, or when an express contract does not fully address the subject matter. The court reasoned that AAC had acted in bad faith in failing to maintain Harborplace in good order and repair and that the lease does not fully address the remedy for breach of AAC's obligation to maintain the property.[3]

AAC noted its timely appeal thereafter. Bubba Gump did not note a cross-appeal.

### QUESTIONS PRESENTED

AAC presents three questions for review, which we consolidate into one: Did the trial court err in awarding Bubba Gump an "equitable rent reduction" on its unjust enrichment claim, despite the presence of a lease between AAC and Bubba Gump?[4]

---

[3] In announcing its decision, the court mentioned § 39 of the Restatement (Third) of Restitution and Unjust Enrichment (2011). Section 39 applies in "exceptional cases" (*id.* comment a) in which the profits derived from a deliberate breach of contract exceed the potential damages that the plaintiff can recover. Cases under § 39 are rare because "[t]he defendant's potential liability for incidental and consequential damages, over and above the cost of a substitute performance, limits the occurrence of profitable breaches almost to the vanishing point." *Id.* comment f. Bubba Gump does not rely on § 39 to support the judgment below.

[4] AAC formulated its questions as follows:

For the reasons stated herein, we shall reverse.

## STANDARD OF REVIEW

When a case is tried without a jury, the standard of review in this Court is governed by Maryland Rule 8-131(c):

> When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

This Court defers to factual findings by the trial court unless they are clearly erroneous. *Ryan v. Thurston*, 276 Md. 390, 392 (1975). We review the trial court's legal conclusions *de novo*. *Goff v. State*, 387 Md. 327, 337-38 (2005). The circuit court's determinations that Bubba Gump could prevail on the unjust enrichment claim because of bad faith or because the lease did not fully address the subject matter are legal conclusions, which we review *de novo. See Janusz v. Gilliam*, 404 Md. 524, 537 (2008) (citing *Griffin v. Bierman*, 403 Md. 186, 195 (2008)). *De novo* review requires this Court

---

1. Did the Circuit Court err in awarding Bubba Gump an "equitable rent reduction" on its unjust enrichment claim where there is a Lease that governs the relationship between AAC, as Landlord, and Bubba Gump, as Tenant?

2. Did the Circuit Court err in citing bad faith as a ground for its unjust enrichment award to Bubba Gump where there was no bad faith as a matter of law?

3. Where Bubba Gump's unjust enrichment claims arose entirely out of the Lease, did the Circuit Court err in finding that the Lease did not fully address the remedy for the Landlord's breach of the duty of care and maintenance?

6

to determine whether the trial court's conclusion was "legally correct." *Walter v. Gunter*, 367 Md. 386, 392 (2002).

**DISCUSSION**

"'[U]njust enrichment is notoriously difficult to define.'" *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007) (quoting Daniel Friedmann, *Restitution of Benefits Obtained Through the Appropriation of Property or the Commission of a Wrong*, 80 Colum. L. Rev. 504, 504 (1980)). For our purposes, it is sufficient to observe that Bubba Gump's claim for unjust enrichment is, by all accounts, a quasi-contract claim.

According to the Court of Appeals, a "quasi-contract" is a "'[l]egal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise.'" *County Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94 (2000) (quoting BLACK'S LAW DICTIONARY 324 (6th ed. 1990)).

> "It is not based on intention or consent of the parties, but is founded on considerations of justice and equity, and on doctrine of unjust enrichment. It is not in fact a contract, but an obligation which the law creates in absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it."

*Id.* at 94-95 (quoting BLACK'S LAW DICTIONARY, *supra*, 324).

"'[Q]uasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises.'" *Id.* at 95 (quoting

7

Restatement (Second) of Contracts § 4 (1981)). "'They are obligations created by law for reasons of justice.'" *Id.* at 95 (quoting Restatement (Second) of Contracts, *supra*, § 4).[5]

More than three decades ago, this Court recognized "'[t]he general rule'" that "'no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.'" *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md. App. 766, 776 (1984) (quoting *Industrial Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982)). "'It is,'" now, "'settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties.'" *County Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. at 96 (quoting *FLF, Inc. v. World Publ'ns, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998)); *accord Janusz v. Gilliam*, 404 Md. 524, 537 (2008); *Francis O. Day Co. v. Montgomery Cnty.*, 102 Md. App. 514, 521 (1994), *overruled on other grounds, Harford Cnty. v. Town of Bel Air*, 348 Md. 363 (1998); *First Nat'l Bank v. Burton, Parsons & Co.*, 57 Md. App. 437, 451-52 (1984); *Cunney v. Patrick Communications, LLC*, 191 F. Supp. 3d 480, 502-03 (D. Md. 2016), *aff'd*, 703 Fed. App'x 204 (4th Cir. 2017) (per curiam); *Swedish Civil Aviation Admin. v. Project Mgmt.*

---

[5] Bubba Gump asserts that its claim for unjust enrichment is equitable in nature. To the contrary, "[a]lthough quasi-contract is often described as 'equitable' and indeed recovery in restitution is based upon notions of justice and fairness, 'this refers merely to the way in which a case should be approached, since it is clear that the action is at law and the relief given is a simple money judgment.'" *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md. App. 766, 775 (1984) (quoting 1 George E. Palmer, *The Law of Restitution* § 1.2 (1978)).

*Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002); *see also Ver Brycke v. Ver Brycke*, 379 Md. 669, 693 n.9 (2004) (observing that a quasi-contractual claim for unjust enrichment "would have been untenable" had plaintiffs argued that they had a contract with defendants).

This Court has explained the law's rationale:

> "When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow."

*Mass Transit Admin. v. Granite Constr. Co.*, 57 Md. App. at 776 (quoting *Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d at 1002).

The Court of Appeals has listed four potential exceptions to the prevailing rule barring unjust enrichment when an enforceable contract exists. These "narrow exceptions"[6] may apply: "when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual recission of the contract, when recission is warranted, or when the express contract does not fully address a subject matter." *County Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. at 100 (footnotes omitted); *see also Janusz v. Gilliam*, 404 Md. at 537. No reported decision applying Maryland law has ever upheld a judgment based on any of these exceptions.

In this case, the circuit court relied on two of the exceptions in justifying the equitable reduction in rent. First, the court reasoned that AAC's failure to comply with

---

[6] *Cunney v. Patrick Communications, LLC*, 191 F. Supp. at 503.

9

its obligation to keep the property in good order and repair amounted to bad faith. Second, the court reasoned that the lease does not fully address the remedy for AAC's breach of its obligation to keep the property in good order and repair.

The circuit court erred in relying on the exception for bad faith. For this exception to apply, Bubba Gump needed evidence of bad faith or fraud in the formation of the contract, as opposed to the performance of the contract. *See Jones v. Pohanka Auto North, Inc.*, 43 F. Supp. 3d 554, 573 (D. Md. 2014) (citing *Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 497 (D. Md. 2002)); *accord Chevron U.S.A. Inc. v. Apex Oil Co.*, 113 F. Supp. 3d 807, 822 (D. Md. 2015); *J.E. Dunn Constr. Co. v. S.R.P. Dev. L.P.*, 115 F. Supp. 3d 593, 608 (D. Md. 2015). AAC, however, did not participate in the formation of the contract (i.e., the original lease): it received its interest in the lease through an assignment more than a year after the original lease was signed. And while AAC and Bubba Gump did enter into a lease amendment in March 2015, the circuit court did not find that AAC acted in bad faith when it entered into the lease amendment. Instead, the court found only that AAC acted in bad faith in failing to comply with the landlord's obligation to keep Harborplace in good order and repair. That finding, of a bad faith breach of contract, will not support a deviation from the general rule that a claim for unjust enrichment does not lie if the plaintiff has an enforceable contract.

The circuit court also erred in relying on the exception for express contracts that do not fully address the relevant subject matter. The comprehensive, fifty-page lease not only addresses AAC's obligation to maintain the common areas in good order and repair, but Bubba Gump pursued and received relief under the lease for AAC's material breach

10

of that obligation.  Bubba Gump has "'turn[ed] to quasi-contract for recovery'"[7] only

because it failed in its obligation to demonstrate its right to the contractual remedy of lost

profits as a result of AAC's breach.  In short, the lease covers the same subject matter as

the unjust enrichment claim that Bubba Gump purported to assert; therefore, no quasi-

contractual claim could arise.  *County Comm'rs of Caroline Cty. v. J. Roland Dashiell &*

*Sons, Inc.*, 358 Md. at 100; *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md. App. at

776.

Bubba Gump appears to argue that the lease "does not fully address" the

landlord's failure to allocate a portion of the rent payments to maintain the Joint Use

Areas because the document contains no specific remedy for that breach.  To the

contrary, Bubba Gump had a remedy for that breach (a common-law action for damages

for breach of contract), Bubba Gump availed itself of its remedy with some measure of

success, and Bubba Gump seeks an additional remedy only because it is dissatisfied

about the amount of damages that it was able to attribute to the breach.  To afford Bubba

Gump the additional remedy of an "equitable rent reduction" in these circumstances, a

court would have to rewrite the lease to eliminate part of Article 4, which states that the

Minimum Annual Rental must be paid in full and "without deduction or set-off."  To

award an "equitable rent reduction" in the amount that Bubba Gump claimed to have paid

for the maintenance of the common areas, a court would have to rewrite part of Article

---

[7] *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md. App. at 776 (quoting *Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 433 N.E.2d at 1002).

17, which states that AAC, "in its sole and absolute discretion," may appropriate any portion of the monthly rent toward the expenses of maintaining the Joint Use Areas.

As additional support for its contention that it can assert a quasi-contractual claim for unjust enrichment even though the comprehensive, fifty-page contract exhaustively defines its rights, Bubba Gump cites Article 31 of the lease. That provision states:

> All rights and remedies of Landlord and Tenant under this Lease or at law are cumulative, and the exercise of one or more rights or remedies shall not exclude or waive the right to the exercise of any others. All rights and remedies may be exercised and enforced concurrently, whenever and as often as desirable.

Article 31 simply says that if Bubba Gump has multiple remedies, the exercise of one does not preclude the exercise of another, and vice versa. Article 31, however, does not confer any remedies on Bubba Gump. Article 31 certainly does not give Bubba Gump the right to assert a quasi-contractual claim for unjust enrichment even though the lease fully addresses the consequences of the landlord's breach.

In summary, the lease gave Bubba Gump a remedy for AAC's failure to maintain and repair the Joint Use Areas, and the record lacks any evidence demonstrating bad faith by AAC during the formation of the lease. As a matter of law, therefore, Bubba Gump could not bring a claim of unjust enrichment, and the circuit court erred in awarding Bubba Gump an equitable rent reduction of $1,096,270.51.[8]

---

[8] Although Bubba Gump requested declaratory relief, the circuit court appears not to have entered a separate written order in which it formally declared the rights of the parties, as the law requires. *See*, *e.g.*, *Point's Reach Condo. Council of Unit Owners v. Point Homeowners Ass'n, Inc.*, 213 Md. App. 222, 282 (2013). The error is, however, harmless, because the court's written judgment adequately explains the basis of its ruling and its assessment of the parties' rights. *See id*. at 282-83. On remand, the court shall

12

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY, AWARDING DAMAGES FOR UNJUST ENRICHMENT UNDER COUNT III OF THE AMENDED COMPLAINT, REVERSED; JUDGMENT AFFIRMED IN ALL OTHER RESPECTS; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH DIRECTIONS TO ENTER A DECLARATORY JUDGMENT CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.**

---

enter a declaratory judgment that comports with this opinion and the portions of its ruling that were not challenged on appeal.

13